UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


MICHAEL B. BOYLE,

                    Petitioner,

v.                                  Case No. 3:10-cv-702-J-34TEM

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
                    Respondents.
_____

## ORDER

### I. Status

    Petitioner Michael B. Boyle, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Doc. #1) under 28 U.S.C. § 2254 on August 11, 2010.  Boyle challenges a 2006 state court (Duval County, Florida) judgment of conviction for dealing in stolen property.  Respondents have submitted a memorandum in opposition to the Petition.  See Respondents' Response to Petition for Habeas Corpus (Response) (Doc. #15) with exhibits (Resp. Ex.).  On September 27, 2010, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #7), admonishing Boyle regarding his obligations and giving Boyle a time frame in which to submit a reply.  Boyle submitted a brief in reply on July 8, 2011.  See Petitioner's Reply to Respondents' Response (Reply) (Doc. #22).  This case is ripe for review.

## II. Procedural History

On April 13, 2006, the State of Florida charged Michael Bruce Boyle with burglary (count one); dealing in stolen property (count two); possession of a firearm by a convicted felon (count three); and possession of controlled substance paraphernalia (count four). Resp. Ex. A at 21-22, Amended Information.  After jury selection, Boyle proceeded to a jury trial on counts one and two.  Resp. Exs. B; C; D, Transcripts of the Jury Trial (Tr.).  At the conclusion of the trial, a jury found Boyle guilty of count two, but not guilty of count one.  Resp. Ex. A at 68-69, Verdicts; Tr. at 370.  On July 6, 2006, the trial court sentenced Boyle, as a habitual felony offender, to a term of eighteen years of imprisonment.  Resp. Ex. A at 82-87, 98-119 (Sentencing Tr.).

On appeal, Boyle, through counsel, filed an Initial Brief, arguing that the trial court erred when it failed to find a discovery violation where the State did not provide the defense with a copy of Tony Creppel's written statement to police, which contained an alleged inculpatory statement of Boyle, and the State ultimately introduced into evidence (ground one). Resp. Ex. H, Initial Brief of Appellant.  Additionally, Boyle argued that the trial court committed fundamental error in instructing the jury on the inference of guilty knowledge based on: possession of recently stolen property because the instruction constitutes an unconstitutional mandatory conclusive presumption (ground two); the

2

sale of stolen property at a price substantially below its fair market value because the instruction constitutes an unconstitutional mandatory presumption (ground three); the sale of stolen property at a price substantially below market value because the instruction did not apply as there was no sale (ground four); and possession of recently stolen property because Boyle did not have dominion and control of the property (ground five).

Boyle also argued that the dealing in stolen property statute is unconstitutional on its face because it eliminates the mens rea requirement (ground six); the offense of dealing in stolen property must be considered a strict liability crime where the jury's verdict does not specify whether Boyle "knew" the property was stolen or "should have known" the property was stolen, and if so, the sentence of eighteen years in prison violates due process insofar as it exceeds the maximum sentence that may be imposed for a strict liability crime (ground seven); and the trial court erred in imposing a habitual felony offender sentence because the factual questions regarding the date of Boyle's last felony conviction, date of release from prison and dangerousness to society were not determined by the jury as required by Apprendi v. New Jersey, 530 U.S. 466 (2000), and Cunningham v. California, 549 U.S. 270 (2007), (ground eight).  The State filed an Answer Brief, see Resp. Ex. I, and Boyle filed a Reply Brief, see Resp. Ex. J.  On January 24, 2008, the appellate court affirmed Boyle's conviction and sentence

per curiam without issuing a written opinion, see Boyle v. State, 975 So.2d 1135 (Fla. 1st DCA 2008); Resp. Ex. K, and the mandate issued on March 20, 2008.[1]  Boyle did not seek review in the United States Supreme Court.

On November 27, 2006, Boyle, through counsel, filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).  In his request for post conviction relief, Boyle asserted that the trial court erred in sentencing him because the eighteen-year prison sentence far exceeds the maximum sentence that may be imposed for dealing in stolen property under the strict liability ("should know") theory of prosecution.  Resp. Ex. E at 1-9.  The trial court denied the motion on November 28, 2006, finding that the sentence "is lawful, correct and appropriate."  Id. at 10-11.

On December 18, 2006, Boyle, through counsel, filed a second motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).  In this request for post conviction relief, Boyle asserted that the trial court erred in sentencing him because the eighteen-year prison sentence violates Apprendi v. New Jersey.  Resp. Ex. G at 1-12.  The trial court denied the motion on January 19, 2007, finding that the sentence "is lawful, correct and appropriate."  Id. at 13.

---

[1] Online docket, Michael Boyle v. State of Florida, Case No. 1D06-3870, website for the First District Court of Appeal (http://www.1dca.org).

Next, on May 5, 2008, Boyle filed a pro se motion for reduction or modification of sentence pursuant to Florida Rule of Criminal Procedure 3.800(c). Resp. Ex. L at 1-4. The trial court denied the motion on May 27, 2008. Id. at 5.

On March 13, 2009, Boyle filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. M at 1-10. In his amended request for post conviction relief (Rule 3.850 motion), Boyle asserted that defense counsel was ineffective because she failed to: investigate Tony Creppel's written statement to police (ground one); instruct and advise Boyle that the jury could, and would, be instructed that the inference of guilty knowledge based on possession of recently stolen property would allow the jury to convict him of burglary based on his alleged possession of the recently stolen materials, and had counsel advised him, Boyle would have accepted the State's ten-year plea offer (ground two); argue that Boyle was assisting the person he believed to be the rightful owner and request a special jury instruction to excuse Boyle's behavior (ground three); file a motion to declare the dealing in stolen property statute unconstitutional on its face because it eliminates the mens rea requirement, and argue the issue to the trial court to preserve it for appellate review (ground four); object to the special jury instruction relating to the sale of an item below its real or known value (ground five); and move for a judgment of acquittal that

5

Boyle could be found guilty of only theft (ground six). Id. at 11-24.  The State responded.  Id. at 27-30.  Referring to and adopting the State's response, the circuit court, on January 19, 2010, denied the Rule 3.850 motion for the reasons stated in the State's response.  Id. at 54.  On appeal, Boyle filed a brief, see Resp. Ex. N, and the State notified the court that it did not intend to file an answer brief,  see Res. Ex. PD-3.  The appellate court affirmed the trial court's decision per curiam on May 19, 2010, see Boyle v. State, 38 So.3d 135 (Fla. 1st DCA 2010); Resp. Ex. O, and later denied Boyle's motion for rehearing, see Resp. Ex. PD-3.  The mandate was issued on July 13, 2010.  Resp. Ex. P.

On July 1, 2010, Boyle filed another pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Resp. Ex. Q at 1-16.  In this request for post conviction relief, Boyle asserted that defense counsel was ineffective because she failed to: object and move for a mistrial when the prosecutor repeatedly ridiculed the defense theory and attacked defense counsel (ground one); object to the prosecutor repeatedly testifying as to his personal opinion on the evidence, credibility of witnesses, and the ultimate question of guilt (ground two); object and move to exclude the jury instruction on sale or attempted sale of property substantially below fair market value, giving rise to the inference of knowledge that the said property was stolen (ground three); move the court to exclude Boyle's

alleged comment that was used as consciousness of guilt evidence (ground four); suppress the evidence found in the traffic stop as fruit of the poisonous tree (ground five); and develop and argue that the equipment was not new, but was used and no longer worth its in store shelf price at the time of the alleged burglary and alleged attempted sale (ground six). Additionally, Boyle asserted that the cumulative effect of counsel's errors and omissions, as argued in grounds one through six, deprived him of a fair and impartial trial (ground seven). Finding that the Rule 3.850 motion was filed more than two years after Boyle's conviction became final, the circuit court denied the motion as untimely as well as successive. Id. at 17-18. On appeal, Boyle filed a brief, see Resp. Ex. R, and the State notified the court that it did not intend to file an answer brief, see Resp. Ex. S. The appellate court affirmed the trial court's decision per curiam on October 20, 2010, see Boyle v. State, 48 So.3d 53 (Fla. 1st DCA 2010); Resp. Ex. T, and the mandate was issued on November 16, 2010, see Resp. Ex. PD-4.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations. See 28 U.S.C. § 2244(d); Response at 3 n.2.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an

applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Exhaustion/Procedural Default

There are prerequisites to a federal habeas review.  Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction.  See 28 U.S.C. § 2254(b), (c).  To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted).  Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)) To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

The United States Supreme Court discussed the doctrine of procedural default:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See,

9

> e.g., Coleman,[2] supra, at 747-748, 111 S.Ct.
> 2546; Sykes,[3] supra, at 84-85, 97 S.Ct. 2497.
> A state court's invocation of a procedural
> rule to deny a prisoner's claims precludes
> federal review of the claims if, among other
> requisites, the state procedural rule is a
> nonfederal ground adequate to support the
> judgment and the rule is firmly established
> and consistently followed. See, e.g., Walker
> v. Martin, 562 U.S. --, --, 131 S.Ct. 1120,
> 1127-1128, 179 L.Ed.2d 62 (2011); Beard v.
> Kindler, 558 U.S. --, --, 130 S.Ct. 612,
> 617-618, 175 L.Ed.2d 417 (2009). The doctrine
> barring procedurally defaulted claims from
> being heard is not without exceptions. A
> prisoner may obtain federal review of a
> defaulted claim by showing cause for the
> default and prejudice from a violation of
> federal law. See Coleman, 501 U.S., at 750,
> 111 S.Ct. 2546.

Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012).

Thus, procedural defaults may be excused under certain circumstances: notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Maples v. Thomas, 132 S.Ct. 912, 922 (2012) (citations omitted); In Re Davis, 565 F.3d 810, 821 (11th Cir. 2009) (citation omitted). In order for Petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).

[3] Wainwright v. Sykes, 433 U.S. 72 (1977).

conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>,[4] 477 U.S. at 488, 106 S.Ct. 2639). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999), <u>cert</u>. <u>denied</u>, 528 U.S. 934 (1999).

In <u>Martinez</u>, the Supreme Court modified the general rule in <u>Coleman</u>[5] to expand the "cause" that may excuse a procedural default. <u>Martinez</u>, 132 S.Ct. at 1315.

Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a

---

[4] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

[5] "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" <u>Maples v. Thomas</u>, 132 S.Ct. 912, 922 (citing <u>Coleman</u>, 501 U.S. at 753). The Court reasoned that, under principles of agency law, the attorney is the prisoner's agent, and therefore, the principal bears the risk of negligent conduct on the part of his agent. <u>Coleman</u>, 501 U.S. at 753-54. In <u>Coleman</u>, the alleged ineffectiveness of counsel was on appeal from an initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court. <u>Id</u>. at 755. However, the <u>Martinez</u> Court addressed inadequate assistance of counsel at an initial-review collateral proceeding.

> prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. <u>Cf</u>. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

<u>Id</u>. at 1318-19.

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result.  The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at

> 496, 106 S.Ct. at 2649.[6]  "This exception is
> exceedingly  narrow  in  scope,"  however,  and
> requires  proof  of  actual  innocence,  not  just
> legal  innocence.  <u>Johnson v. Alabama</u>, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

<u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010), <u>cert</u>. <u>denied</u>,

131 S.Ct. 647 (2010).  "To meet this standard, a petitioner must

'show that it is more likely than not that no reasonable juror

would have convicted him' of the underlying offense." <u>Johnson v.</u>

<u>Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v.</u>

<u>Delo</u>, 513 U.S. 298, 327 (1995)), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002).

Additionally, "'[t]o be credible,' a claim of actual innocence must

be based on reliable evidence not presented at trial." <u>Calderson</u>

<u>v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at

324).  With the rarity of such evidence, in most cases, allegations

of actual innocence are ultimately summarily rejected.  <u>Schlup</u>, 513

U.S. at 324.

### VI. Standard of Review

The  Court  will  analyze  Boyle's  claims  under  28  U.S.C.  §

2254(d).  This standard is described as follows:

> As explained by the Supreme Court, the
> phrase  "'clearly  established  Federal
> law' . . . refers to the holdings . . . of
> [the Supreme Court's] decisions as of the time
> of  the  relevant  state-court  decision."
> <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120
> S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  We
> have held that to be "contrary to" clearly
> established federal law, the state court must

---

[6] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed <u>de novo</u>, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

<u>Jennings v. McDonough</u>, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual

findings] by clear and convincing evidence."[7]
28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Boyle's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VII. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v.

---

[7] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

<u>Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>,

539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S.

668, 687 (1984)).

> To establish deficient performance, a
> person challenging a conviction must show that
> "counsel's representation fell below an
> objective standard of reasonableness."
> [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052.
> A court considering a claim of ineffective
> assistance must apply a "strong presumption"
> that counsel's representation was within the
> "wide range" of reasonable professional
> assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The
> challenger's burden is to show "that counsel
> made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." <u>Id</u>., at
> 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger
> must demonstrate "a reasonable probability
> that, but for counsel's unprofessional errors,
> the result of the proceeding would have been
> different.[8] A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome." <u>Id</u>., at 694, 104 S.Ct. 2052.
> It is not enough "to show that the errors had
> some conceivable effect on the outcome of the
> proceeding." <u>Id</u>., at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." <u>Id</u>., at 687, 104
> S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88.

---

[8] "To prove prejudice in the context of a foregone guilty plea, a prisoner must, at a minimum, establish that there is [a] reasonable probability that, but for counsel's deficient advice, he would have pleaded guilty and would not have insisted on going to trial." <u>Toepfer v. United States</u>, Case No. 12-13047, 2013 WL 1953705, *3 (11th Cir. May 13, 2013) (per curiam) (citing <u>Lafler v. Cooper</u>, 132 S.Ct. 1376, 1385 (2012); <u>Coulter v. Herring</u>, 60 F.3d 1499, 1504 (11th Cir. 1995)).

Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward, 592 F.3d at 1163 (citation omitted).  "Surmounting Strickland's high bar is never an easy task." Harrington, 131 S.Ct. at 788 (quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference.  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' [Strickland], at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[9], 556 U.S., at ----, 129 S.Ct. at 1420." Harrington, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, supra, at 473, 127 S.Ct. 1933.  And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

---

[9] Knowles v. Mirzayance, 556 U.S. 111 (2009).

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also
Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In
addition to the deference to counsel's performance mandated by
Strickland, the AEDPA adds another layer of deference--this one to
a state court's decision--when we are considering whether to grant
federal habeas relief from a state court's decision.").

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One - Subclaim A

As ground 1(a), Boyle asserts that counsel was ineffective
when she failed to investigate Creppel's written statement[10] and
failed to advise Boyle of the strength of the State's case,
resulting in Boyle's rejection of the State's ten-year plea offer.
Assuming that pro se Petitioner intends to raise the same
ineffectiveness of trial counsel claim here that he raised in his
Rule 3.850 motion in state court, his ineffectiveness claim is
sufficiently exhausted.  See Resp. Ex. M at 13-15.  In responding
to Boyle's claim in state court, the State argued:

> In Ground One, the Defendant alleges that
> Defense Counsel was ineffective for failing to
> investigate the written statement of witness
> Tony Creppel.  The Defendant asserts Creppel's
> testimony, that Defendant told him "no, he
> might know who they belong to," was omitted
> from the copy of the written statement the
> Defendant was given and that counsel failed to

---

[10] See Resp. Ex. F, Statement of Lauris Tony Creppel, dated
October 4, 2005 (Creppel's Statement) (containing Boyle's statement
to Creppel: "Na, he might know who it belongs to.").

fully investigate whether this statement was contained in the written report given in discovery.  In fact, there is no deficient performance by counsel relating to Ground One, as the actual written statement was fully investigated in deposition.  From Tony Creppel's deposition:

Q:   And at that point what did you do next?

A:   I filled out a statement.  I'm not sure if I filled the statement out first after I looked.  I think I filled out the statement first and then they asked me to identify people.

Q:   Okay.  Is this the statement that you're referring to (indicating)?

A:   Yes.

Q:   Okay.  You wrote that at the Police Memorial Building?

A:   Yes.

Q:   Okay.  Did you give a verbal statement to any police officers or did you just write the written statement?

A:   Well, I gave him a verbal statement and he asked me to write down that information, be specific, and that's what I wrote down.

Q:   Okay.  Did you tell them the same thing that you wrote?

A:   Basically, yes.

> Q:  Did you give them any other
>     information other than what you
>     wrote down?
>
> A:  I tried to keep it just short
>     and to the facts.
>
> Deposition, Page 29, line 19, through
> Page 30, line 17. Defendant seems to be
> alleging that Defendant did not see the entire
> written statement until trial. In fact, trial
> counsel actually showed the written statement
> to the witness in deposition, so it cannot be
> said the written statement was not fully
> investigated. Since there was no deficient
> performance by counsel, there can be no
> ineffective assistance.

Resp. Ex. M, State's Answer to Defendant's Motion for Post-Conviction Relief, at 27-28. The state circuit court denied Boyle's Rule 3.850 motion as to this claim for the reasons set forth in the State's response. <u>Id</u>. at 54. On appeal, Boyle filed a brief addressing this claim, <u>see</u> Resp. Ex. N at 17-19, and the State notified the court that it did not intend to file an answer brief. The appellate court affirmed the trial court's denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Boyle's motion for post conviction relief on the merits. If the appellate court addressed the merits, Boyle would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not

involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Boyle is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Boyle's claim is still without merit. The trial court's conclusion is fully supported by the record. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Boyle must establish that no competent attorney would have taken the action that counsel, here, chose.

Indeed, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th

Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted), <u>cert</u>. <u>denied</u>, 516 U.S. 856 (1995).   Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance.   <u>Ward v. Hall</u>, 592 F.3d at 1164 (quotations and citation omitted); <u>Dingle v. Sec'y for Dept. of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted), <u>cert</u>. <u>denied</u>, 552 U.S. 990 (2007).   Boyle failed to carry this burden.

Given the record, in this case, counsel's performance was well within the wide range of professionally competent assistance. Boyle asserts that counsel (Kelly Papa) was ineffective because she failed to investigate the discovery provided by the State, specifically Creppel's written statement.   <u>See</u> Petition at 6A.   The following sequence of events is relevant.   Boyle committed the offense of dealing in stolen property on the afternoon of October 4, 2005.   Resp. Ex. A, Arrest and Booking Report, at 1-2. According to the Arrest and Booking Report, Creppel ("Witness 1") "positively identified suspect Boyle as being at the pawn shop and trying to sell" the amplifier, speakers and nail gun to him.   <u>See</u> <u>id</u>. at 2, 3; <u>see</u> <u>also</u> <u>id</u>. at 21, Amended Information (charging Boyle with dealing in stolen property).   That evening at the Police

22

Memorial Building, Creppel provided a two-sided written statement,
which read:

> **[(First Page of the Statement)]**
>
> At about 2:00 pm at American Pawn on Edgewood
> near Commonwealth I noticed a man carry in 2
> large "Junk" speakers and a phonic 300w + 300w
> amp[lifier].  The amp[lifier] has a very odd
> shape and caught my attention[.] It is not a
> box, but a wedge shape . . . so it leans back
> at an angle. I started talking to the man
> about the system and he really did not know
> much about it.  The pawn shop did not want to
> buy the system so he carried it out to a green
> F150 licens[e] # Q507RQ FL tag late model no
> topper.  Another man called me over to ask if
> I wante[d] to buy the system for $300[.] I
> said no then he offered it for $250 then
> $200[.] I still said no thank you[.] I did
> [not] want to buy something that may be
> stollen [sic].  Then he offered to sell me a
> pas load [(Paslode)] nailer in a yellow
> plastic box for $100.
>
> I told him to check at the Music Carasel [sic]
> [(Music Carousel)]
>
> **[(Second or Back Page of the Statement)]**
>
> because the "Junk" speakers were his personal
> brand that he makes and sells[.]
>
>     The fool then said "Na he might know who
> it belongs to."
>
> I went to the music caracel [sic] and asked
> Kevin the Owner if someone he knows had that
> type equipment come up missing.  His answer
> was yes <u>Debbi</u>?  We calle[d] her and gave her
> the licens[e] plate # and location of where
> the men were at about 2:45-3:00 pm[,] 4 Oct
> 05[.]

Creppel's Statement at 1-2 (emphasis added).[11]

The State, on November 10, 2005, provided a list of witnesses to the defense, which included Tony Creppel; that document was delivered by hand to Assistant Public Defender J. Abel.  <u>See</u> <u>id</u>. at 12, State's Discovery Exhibit and Demand for Reciprocal Discovery. According to Boyle, in mid-November 2005, he rejected the State's ten-year plea offer based on counsel's advice that the State had not provided "enough evidence" in "the First discovery."  Reply at 3.  On March 3, 2006, defense counsel (Andrea Fourman) deposed Creppel, who described his encounter with Boyle outside the pawn shop on October 4, 2005.

> There was a gentleman looking to sell a set of speakers and an amp in the pawnshop.  I spoke with him about that equipment, and he really didn't know much about it.  And they didn't want to buy it, so they took it back outside and I was curious about why he's got this equipment.  So I went outside and Mr. Boyle approached me and asked me if I wanted to buy the equipment.
>
> . . . .
>
> I was kind of curious, and when they did not buy it from him he took it back outside. And now I'm concerned, whose equipment is this.  So when I went outside that's when Mr. Boyle – what is his name?
>
> . . . .

_____

[11] In the upper left-hand corner of the first page of Creppel's statement, the section "PAGE ___ OF ___ PAGES" was never completed. If this section had been filled out, defense counsel may have been alerted as to the missing second page.

> Mr. Boyle approached me.  They just put
> it in the truck and I was standing there and
> he asked me if I was interested in buying it.
>
>         . . . .
>
> He asked me if I would b[u]y it for 300
> and I said, no, thank you, and he went to 250
> and I said, no, thank you and he went to 200
> and I said, no, thank you, and I -- that's
> when I said -- because I noticed they were
> Junk speakers sold by the Music Carousel.  **I
> told him, why don't you take these speakers to
> the Music Carousel, he's the one that sells
> these speakers, he'll probably buy them back
> from you.  And he said, quote, no, he might
> know who they belong to.** And what went through
> my mind was, you're absolutely right.  So I
> looked at his license number on the truck, the
> color of the truck, the type of the truck,
> took a look at him again, walked around, wrote
> that number down, and went over to Kevin's to
> ask if anyone had their equipment stolen.

Resp. Ex. F, Deposition of Lauris Tony Creppel (Creppel's

Deposition), at 16, 18, 21 (emphasis added).  When defense counsel

inquired as to how Creppel remembered Boyle's statement, Creppel

explained:

> Because it struck me so odd that somebody
> would be that stupid to say something like
> that.  That basically told me that he knew it
> was stolen property and that's what made me
> think, you're absolutely right, he may know.
> And I went straight there and gave him
> [(Kevin, the owner at Music Carousel)] the
> information I wrote down.

Id. at 25.  The following colloquy then ensued.

> [CREPPEL]: I filled out a statement.  I'm not
> sure if I filled the statement out first after
> I looked.  I think I filled out the statement
> first and then they asked me to identify
> people.

25

> [DEFENSE COUNSEL]: Okay.  Is this the statement[12] that you're referring to (indicating)?
>
> [CREPPEL]: Yes.
>
> [DEFENSE COUNSEL]: Okay.  You wrote that at the Police Memorial Building?
>
> [CREPPEL]: Yes.
>
> [DEFENSE COUNSEL]: Okay.  Did you give a verbal statement to any police officers or did you just write the written statement?
>
> [CREPPEL]: Well, I gave him a verbal statement and he asked me to write down that information, be specific, and that's what I wrote down.
>
> [DEFENSE COUNSEL]: Okay.  So did you tell them the same thing that you wrote?
>
> [CREPPEL]: Basically, yes.
>
> [DEFENSE COUNSEL]: Did you give them any other information other than what you wrote down?
>
> [CREPPEL]: I tried to keep it just short and to the facts.

Id. at 29-30.  The State, on April 13, 2006, provided additional

discovery information to the defense, which included that

"Defendant offered to sell the speakers, amp, and nailgun to Mr.

Creppel for $300, $250, and $200.  When Mr. Creppel suggested

defendant take the equipment to Music Carousel, defendant declined

saying 'they might know who it belongs to.'  Defendant claimed to

---

[12] Defense counsel still had not been provided with the second page of Creppel's statement.  Reply at 3; Tr. at 141-42.

be unemployed, and to live at 5263 Broadway Ave." Resp. Ex. A at 25, State's 2nd Amended Discovery Exhibit.

Before the June 7, 2006 trial, the trial judge addressed pretrial matters. At that time, defense counsel (Kelly Papa) moved to exclude the second page of Creppel's October 4, 2005 statement. She explained:

> Your Honor, it came to my attention today when Mr. Bavington was going over some of the information he plans to introduce as evidence in the trial that one of the main -- well, the main witness in the case, Mr. Tony Creppel, there was a statement he wrote to [sic] when he went down to the police station. **Up until today I was under the impression that the statement was limited to this one page** and I think what must have happened with the state is that there's a second page to the statement that was -- it was two sided on the state's copy that I made a copy of today where we didn't have this whole second page. There's a -- particularly we didn't have a line which says the fool then said nah, he might know who it belongs to when he was writing that in his statement.
>
> Accordingly, I don't believe Ms. Fourman had that knowledge either at the time she had the case and took the deposition in that case and the second page wasn't produced at the deposition either. It doesn't seem fair for the state to be able to use that when we didn't have any knowledge that this was on his written statement prior to this morning.

Tr. at 141-42 (emphasis added). Next, the following colloquy ensued.

> THE COURT: Can I see the statement?
>
> [DEFENSE COUNSEL]: Yes, sir.

27

THE COURT: Does the state want to be heard on this?

[PROSECUTOR]: Yes. **The defense was aware of this statement although through the inadvertently [sic] lack of copying the second side**, I would direct the court to the deposition of Mr. Creppel and I'll go ahead and file that with the court. On page 25 Mr. Creppel specifically references that statement.

. . . .

Additionally, Your Honor, I referenced that statement specifically in the state's second supplemental discovery exhibit.

[DEFENSE COUNSEL]: Judge, we don't disagree that Mr. Creppel said in the deposition that he had -- that Mr. Boyle had said that. I think part of our argument was that the first time we had ever heard about that was in deposition so many months later and he hadn't ever written it in a statement or said it to anybody. And certainly the state's supplemental discovery which listed that statement by him came out after the deposition I believe. So we thought that the state just added that on after deposition and didn't know that it was ever written down in a statement. **And part of our argument was to be the timing when Mr. Creppel first made that statement. And by not having a copy of the second page of the statement we didn't have any knowledge that it was made that day.**

If I could direct the court's attention to page 25 of the deposition, lines 11 and 12 where the witness wrote or writes or says I went straight there and gave him the information I wrote down. If the court would read the entirety of the deposition, I believe that statement is regarding the information he wrote down about the tag number of the vehicle. I don't think it's about I went straight somewhere and wrote that statement if you read the whole context, sir.

28

THE COURT: Well, certainly the defense is entitled to notice the defendant's [sic] made statements and you were on notice of it on March 3rd when the deposition was taken and whatever the date the supplemental discovery document was filed.  I don't think there's any -- there's any problem with due process or discovery in any way with the fact that you were planning to argue that it didn't come out until deposition and now the statement itself refuting that.  All the case law about this deals with knowing that the statement was made and what the content was not so much knowing specifically when it was given in terms of that affecting your strategy at trial.  I can see where it does affect your strategy, maybe take away one of your arguments.  I don't think that's legally a reason for expressing [sic] that evidence or preventing the state from putting it in.  Ya'll have been on notice he [(Creppel)] claims that's what your client said on that I guess that date was October the 4th or some time around there.

. . . .

So you've been on notice that the state's planning to try to prove through witnesses your client made that statement on that day in October.

. . . .

While it affects your strategy somewhat and your tactics in the trial, it isn't really any kind of discovery violation or any kind of due process problem that would make it necessary to exclude that evidence.

Id. at 142-46 (emphasis added).

While conceding that, through "inadvertently [sic] lack of copying the second side," see id. at 142, defense counsel did not have the second page of Creppel's October 4, 2005 written statement (containing Creppel's reference to Boyle's alleged incriminating

statement: "Na, he might know who it belongs to."), the prosecutor argued that the defense knew about the contents of Boyle's statement. Id. Thus, at the time of the State's plea offer, with the discovery counsel had in her possession at that time, she prepared for trial and advised Boyle of the State's evidence, which included that Creppel would be the State's main witness.

From the October 4, 2005 commission of the offense, through the development of the defense strategy, and up to the July 6, 2006 sentencing,[13] Boyle proclaimed that he did not deal in stolen property. Additionally, after Creppel's deposition, when defense counsel inquired as to whether Boyle had made the statement, Boyle "told counsel there must be some misunderstanding because he never said anything to that effect." Reply at 3; Resp. Ex. N, Initial Brief of Appellant, at 18 (stating that Boyle told counsel that "there must be a mistake of understanding"); 21-22 (stating that Boyle's statement did not mean that he knew the items were stolen, but instead that he "was saying that the man at the store may know who they came from, meaning if he did not buy them, he could at least tell [Boyle] who they belonged to or where they came from as in the store that had sold them in the first place"). Thus, with Boyle's denial that he made any incriminating statement to Creppel, counsel's strategy was to challenge the credibility of Creppel at trial.

---

[13] See Sentencing Tr. at 108.

Undoubtedly, by March 3, 2006, at Creppel's deposition, counsel was apprised of the full extent of Creppel's testimony, including Boyle's alleged prejudicial statement.  Upon becoming aware of Creppel's assertion relating to Boyle's alleged incriminating statement, counsel devised a strategy to cross-examine Creppel at trial as to why he had delayed in making the assertion relating to Boyle's incriminating statement.  <u>See</u> Petition at 6A.[14]  Then, just before trial, upon noticing that she did not have page two of Creppel's statement and then becoming cognizant that Creppel had mentioned Boyle's incriminating statement much earlier in his October 4th written statement to the police, defense counsel moved to exclude page two of Creppel's statement.  Unfortunately for the defense, the trial judge denied counsel's motion just before the trial.

Given these particular circumstances, neither defense counsel's strategy nor advice to Boyle relating to the strength of the State's case was unreasonable given the fact that defense

---

[14] Boyle asserts that "[a]t some point in the prosecution the state offered [him] a 10 year plea offer" that he rejected because counsel had "formulated a strategy to confront Creppel at trial as to why he waited five months after the alleged offense to give this very prejudicial statement."  Petition at 6A.  Boyle states that counsel's strategy "gave [him] a 'false' sense of the strength in the defense, which in turn played a role in [his] rejecting the 10 year plea offer."  <u>Id</u>.  Later, in the Reply, Boyle asserts that the State offered him a ten-year plea in mid-November 2005 that he rejected based on counsel's advise that the State had not provided "enough evidence" in its initial discovery.  <u>See</u> Reply at 2-3.

counsel had not been provided page two of Creppel's statement until just before trial.  Nevertheless, knowing the contents of Boyle's alleged incriminating statement three months before trial, defense counsel had sufficient time to hone her trial strategy, address the potential impact of the incriminating statement with Boyle (who claimed that Creppel and the State had misunderstood the meaning of his statement to Creppel), and then adjust her trial strategy just before the trial (based on the timing of when Creppel had made the assertion relating to Boyle's alleged prejudicial statement).

Moreover, as to advising Boyle on whether to accept or reject a plea offer based on the strength and/or weaknesses of the State's case, counsel's performance was not unreasonable in light of the sequence of events giving rise to what counsel knew over the course of her preparation for trial.  Undoubtedly, throughout the representation, defense counsel advised Boyle based on the evidence she had in her possession at that time.  And, just as soon as she became aware of Boyle's statement, she addressed its potential impact with him.  Boyle's ineffectiveness claim fails because Boyle has not shown deficient performance on the part of counsel.  This Court need not address the prejudice prong.[15]  See Ward, 592 F.3d at 1163.

---

[15] Nothing in the record suggests that, if the defense had discovered Boyle's statement earlier, Boyle would have accepted the State's ten-year plea, given that Boyle denied any involvement with dealing in stolen property and also challenged the incriminating nature of his statement to Creppel.

### B. Ground One - Subclaim B

As ground 1(b), Boyle asserts that counsel was ineffective because she failed to request a special jury instruction on "claim of right" and failed to argue that Boyle "was simply assisting the person he believed to be the rightful owner of the property." Petition at 6B.   Boyle raised this ineffectiveness claim in his Rule 3.850 motion. See Resp. Ex. M at 17-19.   In responding to Boyle's claim in the state circuit court, the State argued:

> In Ground Three, the Defendant alleges that counsel was ineffective for failing "to properly argue that Defendant may have been simply assisting the person he believed to be the rightful owner of the property by 'fielding offers' or 'testing the market' to see what the equipment might bring." Motion, page 8.  The Defendant claims that had counsel developed the defense that "Defendant sincerely believed that he had a possessory right to sell this property, even though unbeknownst to him, the property was actually stolen," then the jury would have "returned a verdict of not guilty."   Motion, page 8. Defendant asserts this claim of alleged ineffective assistance knowing full well that the jury heard Tony Creppel testify that Defendant offered Mr. Creppel the property at a number of rapidly descending prices, and when Mr. Creppel suggested that Defendant take the items to the store from which they came, the Defendant repli[e]d "No, he might know who they belong to."   The defendant bears the burden to overcome the presumption "that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Here, Defendant has failed to show how the

> complained of conduct was not sound trial
> strategy; specifically, not attempting to
> argue that Defendant thought he had a right to
> endeavor to traffic in property when he
> refused to take the property to a store whose
> owner Defendant claimed might know who the
> property belong to.  There is no deficient
> performance complained of in Ground Three.

Resp. Ex. M, State's Answer to Defendant's Motion for Post-Conviction Relief, at 28-29 (emphasis deleted).  The state circuit court denied Boyle's Rule 3.850 motion as to this claim for the reasons set forth in the State's response.  Id. at 54.  On appeal, Boyle filed a brief addressing this claim, see Resp. Ex. N at 21-22, and the appellate court affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions.  Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Boyle is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Boyle's ineffectiveness claim, nevertheless, is without merit. The trial court's conclusion is fully supported by the record. At deposition, Creppel testified that he talked to the man who tried to sell the sound equipment to the pawn shop. Creppel's Deposition at 16-17. Creppel described the encounter inside the pawn shop:

> I was inside the pawn shop when the man came in and had that equipment. And that's nice equipment, so I was wondering if he was going to want to sell it.
>
>      . . . .
>
> And I was talking to him about it, and it seemed to me that he didn't know much about it, so it kind of got my curiosity up.

Id. at 17. At trial, Creppel testified that he asked the man about the sound effects of the system, and the man "didn't even know what I meant by sound effects." Tr. at 209. Creppel recalled that the man's unfamiliarity with the sound system made Creppel "[v]ery suspicious." Id. Creppel testified that he then stepped outside of the pawn shop to watch them load the equipment into a truck because he was "very curious as to why such new equipment was going to be sold . . . ." Id. at 210. Next, Creppel testified that, when he told Boyle to check with Music Carousel where Kevin, the owner, sells that brand of speakers, Boyle responded: "nah, he might know who they belong to." Id. at 214. The record belies Boyle's claim of a good faith belief that his cohort was the true

owner of the property.   Thus, given the record, counsel's strategy to forego any "claim of right" argument to defend Boyle's behavior was not unreasonable.   Counsel's performance was within the wide range of professionally competent assistance.

Assuming arguendo deficient performance by defense counsel, Boyle has not shown prejudice.   He has failed to show that a reasonable probability exists that the outcome of the case would have been different if counsel had requested a special jury instruction to support an argument that Boyle was merely trying to assist the rightful owner in finding a buyer for the equipment and that Boyle did not know the property was stolen.   Therefore, Boyle's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### C. Ground One - Subclaim C

As ground 1(c), Boyle asserts that counsel was ineffective because she failed to object to "the wording of the allegation" in the Information,[16] which included the phraseology "should have known."  Petition at 6B.  Assuming that Boyle intends to raise the same ineffectiveness of trial counsel claim here that he raised in his Rule 3.850 motion in state court, his ineffectiveness claim is

---

[16] See Resp. Ex. A at 21, Amended Information.

sufficiently exhausted.[17]   <u>See</u> Resp. Ex. M at 19-20.   In responding to Boyle's claim in the state circuit court, the State argued:

> In Ground Four, the Defendant asserts counsel was ineffective for failing to file a motion that the Statute is unconstitutional because "it eliminates the mens rea requirement." Motion, page 9. The Supreme Court of Florida, in the case of <u>State v. Tomas</u>, 370 So.2d 1142 Fl. 1979) found that the guilty knowledge requirement of the Statute, that a Defendant "knew or should have known" the property was stolen, is constitutional.   There is no deficient performance complained of in Ground Four.

Resp. Ex. M, State's Answer to Defendant's Motion for Post-Conviction Relief, at 29.   The state circuit court denied Boyle's Rule 3.850 motion as to this claim for the reasons set forth in the State's response.   <u>Id</u>. at 54.   On appeal, Boyle filed a brief addressing this claim, <u>see</u> Resp. Ex. N at 22-28, and the appellate court affirmed the trial court's denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Boyle's motion for post conviction relief on the merits.   If the appellate court addressed the merits, Boyle would not be entitled to relief because the state courts'

---

[17] To the extent that Boyle has expanded the ineffectiveness claim to include new factual allegations that were not before the Rule 3.850 court, those claims are procedurally barred. <u>See</u> Response at 10-11.   Boyle has not shown both cause excusing the default and actual prejudice resulting from the bar.   Moreover, he has not shown that he is entitled to the fundamental miscarriage of justice exception. As shown in the alternative merits analysis which follows, this ineffectiveness claim lacks any merit. <u>See</u> <u>Martinez</u>, 132 S.Ct. at 1318.   Therefore, Boyle has not shown that he can satisfy an exception to the bar.

adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Boyle is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Boyle's claim is still without merit. The trial court's conclusion is fully supported by the record. The Amended Information tracked the language of the dealing in stolen property statute, which states:

> Any person who traffics in, or endeavors to traffic in, property that he or she knows or **should know** was stolen shall be guilty of a felony of the second degree, punishable as provided in ss. 775.082, 775.083, and 775.084.

Fla. Stat. § 812.019(1) (emphasis added). Counsel's performance was well within the wide range of professionally competent assistance. Therefore, Boyle's ineffectiveness claim is without

merit since he has shown neither deficient performance nor resulting prejudice.[18]

### D. Ground One - Subclaim D

As ground 1(d), Boyle asserts that counsel was ineffective because she failed to object to a special jury instruction.  He states that the instruction allowed the jury to infer that Boyle would be guilty of the crime of dealing in stolen property if the property at issue was sold below real or known market value when his crime involved only an attempted sale.  Boyle raised this ineffectiveness claim in his Rule 3.850 motion.  See Resp. Ex. M at

---

[18] See Purvis v. Crosby, 451 F.3d 734, 737 (11th Cir. 2006) (stating that, where petitioner claims counsel should have objected, "we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal."), cert. denied, 549 U.S. 1035 (2006).  The Court noted that its decision in Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310 (11th Cir. 2003) (per curiam), "is not to the contrary."  Purvis, 451 F.3d at 737.

> [In Davis, 341 F.3d 1310] trial counsel objected during voir dire to the Batson error that was being committed but when his objection was rejected, counsel failed to take the next step of renewing that objection after the conclusion of voir dire; in the Florida courts that is a necessary step before the issue may be reviewed on appeal.  Id. at 1312.  This Court held that because the failure of counsel was solely in his role as appellate counsel at trial (those are not the words we used in Davis, but it is what we meant), the prejudice inquiry should focus on the effect that counsel's omission at trial had on the appeal.  Id. at 1315-16.

Id.

20-21.  Respondents concede that portions of the State's response in state court as to this claim were "factually incorrect," see Response at 11, and this Court agrees.   Therefore, since the circuit court relied upon and adopted the State's response in denying Boyle's Rule 3.850 as to this claim, this Court will not defer to that state court ruling, but instead will address the claim on the merits.[19]

The following facts are pertinent to the claim.   The State requested a special jury instruction as to the charge of dealing in stolen property.   The requested charge read:

> Proof of the purchase or sale of stolen property at a price substantially below fair market value, unless satisfactorily explained, gives rise to an inference that the person buying or selling the property knew or should have known it was stolen.

See Resp. Ex. A at 55, Dealing in Stolen Property - Count II.   At trial, the trial judge read the special jury instruction verbatim. See Tr. at 356.   To commit the offense of dealing in stolen property under Florida Statutes section 812.019(1), a person need not complete a sale of stolen property, but only endeavor to traffic in property that he knows or should know was stolen.   The Amended Information alleged that Boyle "did traffic in or endeavor

---

[19] Boyle raised this issue as a trial court error claim on direct appeal, see Resp. Exs. H at 27-28; J at 7-8, and the State filed an answer brief, see Resp. Ex. I at 18-19.   The appellate court affirmed Boyle's conviction and sentence per curiam.

to traffic in" the property of Deborah Clements.  Resp. Ex. A at
21.  Thus, the instruction at issue did not give the jurors the
option to convict Boyle for an uncharged crime.  As previously
discussed, Boyle's defense was that he did not know the property
was stolen.  The evidence at trial showed that Boyle offered the
stolen property for sale at decreasing prices as Creppel continued
to refuse Boyle's offers.  Boyle never claimed that the incomplete
deal with Creppel was done by someone else or that it never
happened.

Boyle has not shown that counsel's failure to object to the
special jury instruction was deficient performance. Even assuming
arguendo deficient performance by defense counsel, Boyle has not
shown prejudice.  Specifically, he has not shown that a reasonable
probability exists that the outcome of the case would have been
different if counsel had objected to the jury instruction. Thus,
Boyle's ineffectiveness claim fails because he has shown neither
deficient performance nor resulting prejudice.

### E. Ground One - Subclaim E

As ground 1(e), Boyle asserts that counsel was ineffective
because she failed to move for a judgment of acquittal as to the
charge of dealing in stolen property.  He argues that he could only
be found guilty of theft since the purpose of the dealing in stolen
property statute is "to prosecute fences and others who dealt in
stolen property as a continuing criminal enterprise, not those who

41

stole for their own benefit."   Petition at 6C.   Boyle raised this ineffectiveness claim in his Rule 3.850 motion.  See Resp. Ex. M at 21-23.   As with ground 1(d), since the State's response as to this claim contains a "factually incorrect" statement,[20] and the circuit court relied upon and adopted the State's response in denying Boyle's Rule 3.850 as to this claim, this Court will not defer to that state court ruling, but instead addresses the claim on the merits.

Florida Statutes section 812.019(1)[21] plainly includes the language "who traffics in, or endeavors to traffic in" property that he knows or should know was stolen.   The statute does not require such activity to be a part of a continuing criminal enterprise.   Given that there was no legal basis for such an argument, Boyle has not shown that counsel's failure to move for a judgment of acquittal based on the argument described by Boyle was deficient performance. Even assuming arguendo deficient performance by defense counsel, Boyle has not shown prejudice.   Specifically,

---

[20] The evidence showed that Boyle attempted to sell the property in question in the parking lot outside of the pawn shop, but that another man unsuccessfully attempted to pawn it inside the pawn shop.  See Tr. at 224, 226, 229.

[21] Florida Statutes section 812.019(1) states:

> Any person who traffics in, or endeavors to traffic in, property that he or she knows or should know was stolen shall be guilty of a felony of the second degree, punishable as provided in ss. 775.082, 775.083, and 775.084.

he has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had moved for a judgment of acquittal based on Boyle's argument.   Thus, Boyle's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice.

### F. Ground Two - Subclaim A

As ground 2(a), Boyle asserts that the trial court erred  when it sentenced him as a habitual felony offender.  Boyle raised this issue in his brief on direct appeal, Resp. Ex H at 38-45; the State filed an Answer Brief, <u>see</u> Resp. Ex. I at 25-30; Boyle filed a Reply Brief, <u>see</u> Resp. Ex. J at 9-12; and the appellate court affirmed Boyle's conviction and sentence per curiam, <u>see</u> <u>Boyle</u>, 975 So.2d 1135.

The State, in its appellate brief, addressed the claim on the merits.  <u>See</u> Resp. Ex. I at 25-30.  Thus, the appellate court may have affirmed Boyle's conviction based on the State's argument on the merits.  If the appellate court addressed the merits, Boyle would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceedings. Thus, Boyle is not entitled to relief on the basis of this claim.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference, Boyle's claim, nevertheless, is without merit.  On June 26, 2000, the United States Supreme Court held that  "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490.  As the Court clarified on June 24, 2004, "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. 296, 303 (2004) (emphasis deleted).  Recognizing recidivism as a traditional basis for a sentencing court's increasing an offender's sentence, however, the Apprendi Court declined to revisit Almendarez-Torres v. United States, 523 U.S. 224 (1998). Apprendi, 530 U.S. at 488-90.  In Almendarez-Torres, the Court established that a defendant's prior conviction is merely "a sentencing factor" that does not have to be submitted to the jury and proved beyond a reasonable doubt.  Almendarez-Torres, 523 U.S. at 226-27, 235.

The United States Supreme Court has not overruled Almendarez-Torres, and its holding remains binding precedent in this Circuit.

See <u>United States v. O'Brien</u>, 130 S.Ct. 2169, 2174, 2180 (2010) (holding the machine gun provision is an element of the offense, not a sentencing factor, but recognizing the <u>Almendarez-Torres</u> exception); <u>Rita v. United States</u>, 551 U.S. 338, 387 n.1 (2007) ("We recognized a single exception to this rule, permitting reliance on the fact of a prior conviction without a jury determination that the defendant had previously been convicted.") In addressing a Sixth Amendment claim that a prior conviction could not be relied upon because it was not found by a jury beyond a reasonable doubt, the Eleventh Circuit stated:

> Both Supreme Court and this circuit's precedent foreclose [Petitioner]'s arguments. The Supreme Court has held that neither the Constitution nor any statute is violated when a prior offense, not charged in the indictment, is used to increase a sentence. <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 226-27, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). We have applied <u>Almendarez-Torres</u> in holding that a district court does not violate the Sixth Amendment when a statutory maximum sentence is increased based upon judicial findings of prior convictions that were never proved to a jury beyond a reasonable doubt or affirmatively admitted by the defendant in his plea hearing. <u>See</u> <u>United States v. Shelton</u>, 400 F.3d 1325, 1330 (11th Cir. 2005). Moreover, we have held that neither <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), nor <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) disturbed the Supreme Court's holding in <u>Almendarez v. Torres</u>. <u>Id</u>. Although various justices of the Supreme Court have questioned the soundness of <u>Almendarez-Torres</u> in subsequent decisions, until it is expressly

> overruled, we are bound to follow it.  <u>See</u>
> <u>United States v. Greer</u>, 440 F.3d 1267, 1273
> (11th Cir. 2006).

<u>United States v. McCain</u>, 358 F. App'x 51, 52 (11th Cir. 2009) (per

curiam) (not selected for publication in the Federal Reporter); <u>see</u>

<u>United States v. Beasley</u>, 447 F. App'x 32, 37 (11th Cir. 2011) (per

curiam) (not selected for publication in the Federal Reporter).

Again, the Eleventh Circuit reiterated its position, rejecting

a Sixth Amendment claim and stating:

> this argument is foreclosed by
> <u>Almendarez-Torres v. United States</u>, 523 U.S.
> 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).
> We repeatedly have explained that, even after
> <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120
> S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its
> progeny <u>Blakely v. Washington</u>, 542 U.S. 296,
> 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and
> <u>United States v. Booker</u>, 543 U.S. 220, 125
> S.Ct. 738, 160 L.Ed.2d 621 (2005), we are
> bound by <u>Almendarez-Torres</u> until it is
> explicitly overruled by the Supreme Court.
> <u>See</u>, <u>e.g.</u>, <u>United States v. Greer</u>, 440 F.3d
> 1267, 1273-74 (11th Cir. 2006); <u>United States
> v. Gibson</u>, 434 F.3d 1234, 1246-47 (11th Cir.
> 2006).
>
> [The Petitioner] argues that
> <u>Almendarez-Torres</u> permits a sentencing court
> to find only the mere fact of a conviction and
> that <u>Apprendi</u>, <u>Booker</u>, and <u>Shepard v. United
> States</u>, 544 U.S. 13, 125 S.Ct. 1254, 161
> L.Ed.2d 205 (2005), bar judge-made findings
> about the factual nature of the prior
> convictions. This Court has already rejected
> this argument. <u>See</u> <u>Greer</u>, 440 F.3d at 1275
> (explaining that <u>Apprendi</u>, <u>Booker</u> and <u>Shepard</u>
> do not "forbid a judge from determining the
> factual nature of a prior conviction," but
> instead "restrict[ ] the sources or evidence
> that a judge (instead of a jury) can consider

in making that finding" (quotation marks omitted)).

United States v. Michel, 430 F. App'x 838, 839 (11th Cir. 2011) (per curiam) (not selected for publication in the Federal Reporter), cert. denied, 132 S.Ct. 434 (2011).  Just as the Eleventh Circuit has acknowledged that it is "bound to follow Almendarez-Torres unless and until the Supreme Court itself overrules that decision[,]" United States v. Thomas, 242 F.3d 1028, 1035 (11th Cir. 2001), cert. denied, 533 U.S. 960 (2001), this Court is bound to follow Almendarez-Torres.  Thus, Boyle's claim does not warrant federal habeas corpus relief.  See Sentencing Tr. at 106-07.

### G. Ground Two - Subclaim B

As ground 2(b), Boyle asserts that the trial court denied him a fair trial by instructing the jury on the inference of guilty knowledge based on the possession of recently stolen property.  He argues that the instruction constitutes "an unconstitutional mandatory conclusive presumption" because it states that possession of recently stolen property "gives rise to" an inference of guilty knowledge.  Boyle raised this issue in his brief on direct appeal, Resp. Ex H at 22-26; the State filed an Answer Brief, see Resp. Ex. I at 14-17; Boyle filed a Reply Brief, see Resp. Ex. J at 3-7; and the appellate court affirmed Boyle's conviction and sentence per curiam, see Boyle, 975 So.2d 1135.

The State, in its appellate brief, addressed the claim on the merits.  <u>See</u> Resp. Ex. I at 14-17.  Thus, the appellate court may have affirmed Boyle's conviction based on the State's argument on the merits.  If the appellate court addressed the merits, Boyle would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Boyle is not entitled to relief on the basis of this claim. Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference, Boyle's claim is still without merit.  <u>See</u> Response at 16.

### H. Ground Two - Subclaim C

As ground 2(c), Boyle asserts that the trial court erred by instructing the jury on the inference of guilty knowledge based on: (1) the sale of stolen property at a price substantially below its fair market value because the instruction constitutes an unconstitutional mandatory presumption; (2) the sale of stolen property when there was no evidence of a completed sale, but only an attempted sale; (3) possession of stolen property because Boyle

did not have dominion and control of the property.  Petition at 8B-8C; Tr. at 356.  Boyle raised these issues in his brief on direct appeal, as grounds three, four and five, see Resp. Ex H; the State filed an Answer Brief, see Resp. Ex. I; Boyle filed a Reply Brief, see Resp. Ex. J; and the appellate court affirmed Boyle's conviction and sentence per curiam.

The State, in its appellate brief, addressed the claims on the merits.  Thus, the appellate court may have affirmed Boyle's conviction based on the State's arguments on the merits.  If the appellate court addressed the merits, Boyle would not be entitled to relief because the state court's adjudication of these claims is entitled to deference under AEDPA.  After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Boyle is not entitled to relief on the basis of these claims.

Additionally, even assuming that the state court's adjudication of these claims is not entitled to deference, Boyle's claims, nevertheless, are without merit.  See Resp. Ex. I; Tr. at 356.  Moreover, to the extent that there may have been a federal constitutional violation, this Circuit has recognized that a

49

reviewing court must engage in a harmless error analysis.  United States v. Allen, 302 F.3d 1260, 1276 (11th Cir. 2002).  On federal habeas review, harmless error is determined by applying the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993).  As the Eleventh Circuit expressed:    "In short, we observe, consistent with the Supreme Court's decision in Fry [v. Pliler, 551 U.S. 112 (2007)], that a federal habeas court may deny relief based solely on a determination that a federal constitutional error was harmless under the Brecht standard."  Mansfield v. Sec'y, Dep't of Corr., 679 F.3d 1301, 1308 (11th Cir. 2012), cert. denied, 133 S.Ct. 861 (2013).  Applying Brecht, "a federal constitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict."  Id. at 1307 (citing Brecht, 507 U.S. at 637). Here, any error was harmless under Brecht.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Boyle seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Boyle "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542

U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  <u>See</u> <u>Slack</u>, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Id</u>.  Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Boyle appeals the denial of the Petition, the Court denies a certificate of appealability.   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of July, 2013.


MARCIA MORALES HOWARD
United States District Judge


sc 7/5
c:
Michael Boyle
Ass't Attorney General (McCoy)